UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| IN THE MATTER OF A SUBPOENA SERVED IN:<br><br>BLUE CROSS BLUE SHIELD ASSOCIATION, et al.,<br><br>                              Plaintiffs,<br><br>V.<br><br>GLAXOSMITHKLINE L.L.C.,<br><br>                              Defendant. | Case No.  3:18-mc-10-RGJ<br><br>[Related to Case No. 2:13-cv-4663 (JS) Pending in the Eastern District of Pennsylvania]<br><br>ECF Case<br><br>**NON-PARTY MARK D. FISCHER AND RAWLINGS & ASSOCIATES, PLLC'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO QUASH GLAXOSMITHKLINE'S SUBPOENA FOR MR. FISCHER'S DEPOSITION; MOTION TO QUASH DUCES TECUM SUBPOENA FOR RAWLINGS & ASSOCIATES, PLLC TO PRODUCE DOCUMENTS; AND MOTION TO TRANSFER THIS ACTION TO THE EASTERN DISTRICT OF PENNSYLVANIA** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

I.      INTRODUCTION ................................................................................................... 1

II.     BACKGROUND ..................................................................................................... 2

        A.      The underlying case ..................................................................................... 2

        B.      GSK's statute of limitations defense........................................................... 4

        C.      The discovery proceedings and GSK's subpoena on Plaintiffs' trial counsel ....... 5

        D.      Magistrate Judge Heffley's May 2 Ruling Prohibiting this discovery from
                Plaintiffs and Plaintiffs' failed attempt to get GSK to withdraw its subpoenas ..... 7

III.    ARGUMENT ........................................................................................................... 7

        A.      Standards...................................................................................................... 7

                1.      Motions to Transfer Motions to Quash a Subpoena to the Forum Court ..... 7

                2.      Motion to Quash Deposition Subpoenas on Opposing Counsel. ................. 7

        B.      The Court (or the EDPA on transfer) should quash GSK's attempt to depose
                opposing counsel........................................................................................... 8

                1.      GSK cannot meet the *Shelton* test. .............................................................. 8

                2.      GSK cannot establish they are entitled to the requested discovery............ 10

                        a.      GSK does not need to depose Mr. Fischer or obtain documents
                                from Rawlings ............................................................................. 10

                        b.      Mr. Fischer is a key lawyer for the Plaintiffs................................. 11

                        c.      It is a virtual certainty that the vast majority of Mr. Fischer's
                                testimony will be protected by privilege and
                                work-product issues. .................................................................... 11

                        d.      GSK has conducted a massive amount of discovery and the
                                discovery deadline is tomorrow.  ................................................. 12

CONCLUSION............................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*Alcon Laboratories, Inc. v. Pharmacia Corp.*,
   225 F. Supp. 2d 340 (S.D.N.Y. Aug. 02, 2002)....................................................................8

*Blue Cross Blue Shield Association v. Glaxosmithkline LLC*,
   No. CV 13-4663, 2016 WL 6612804 (E.D. Pa. Nov. 09, 2016).....................................1, 4

*F.D.I.C. v. Axis Reinsurance Co.*,
   No. 13 Misc. 380 (KPF), 2014 WL 260586 (S.D.N.Y. Jan. 23, 2014)...............................7

*Gortat v. Capala Bros., Inc*.,
   No. 07CV3629(ILG)(SMG), 2010 WL 1879922 (E.D.N.Y. May 10, 2010) .....................9

*In re Linerboard Antitrust Litigation*,
   237 F.R.D. 373 (E.D. Pa. 2006)...................................................................................8, 12

*In re Subpoena Issued to Dennis Friedman*,
   350 F.3d 65 (2d Cir. 2003)...........................................................................................8, 13

*Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621 (6th Cir. 2002) ...........................8

*Sea Tow Intern., Inc. v. Pontin*,
   246 F.R.D. 421 (E.D.N.Y. 2007) ......................................................................................11

*Shelton v. American Motors Corp.,*
   805 F.2d 1323 (8th Cir. 1986) ............................................................................................8

*State Farm Mut. Auto. Ins. Co. v. Stavropolskiy*,
   No. 15-CV-5929, 2017 WL 3116284 (E.D. Pa. July 21, 2017)...........................................8

*U.S. v. Stewart*,
   287 F. Supp. 2d 461 (S.D.N.Y. 2003)................................................................................9

*U.S. v. Yonkers Bd. of Educ*.,
   946 F.2d 180 (2d Cir. 1991)................................................................................................8

*Yash Raj Films (USA) v. Kumar*,
   No. 05cv3811 (FB)(KAM), 2007 WL 3124557 (E.D.N.Y. Oct. 25, 2007).......................8

**Codes**

21 C.F.R. Parts 210 & 211     .................................................................................................2
21 U.S.C. §§ 331(a), 333(a)(2), 351(a)(2)(B)..................................................................................2

**Rules**

Fed. R. Civ. P. 26(c)(1)   .......................................................................................7
Fed. R. Civ. P. 45(f)   .......................................................................................7
Fed. R. Civ. P. 45(d)(3)(A)   .......................................................................................7

## I.     INTRODUCTION

Movant Mark D. Fischer ("Mr. Fischer") is an attorney with the law firm Rawlings &
Associates, PLLC ("Rawlings Law Firm") and one of the lead attorneys for plaintiffs in the
underlying litigation.  Mr. Fischer is Chairman of the Rawlings Law Firm, with offices in
LaGrange, Kentucky, Florence Kentucky and Van Nuys, California. He is the head of its practice
group that has represented health insurers in litigation against pharmaceutical manufacturers for
nearly 2 decades.  Mr. Fischer co-leads a team of lawyers prosecuting a RICO action on behalf of
39 health insurers against GlaxoSmithKline, LLC ("GSK") currently pending in the Eastern
District of Pennsylvania ("EDPA") before District Judge Juan Sánchez. *Blue Cross Blue Shield
Association, et al. v. GlaxoSmithKline L.L.C.*, No. 13-04663, (E.D. Pa.) (the "EDPA Case").[1]
Magistrate Judge Marilyn Heffley presides over pre-trial discovery.

GSK recently subpoenaed Mr. Fischer and Rawlings seeking testimony/documents about
prior representation of some of these 39 health insurers as absent class members to a certified
settlement class in a case involving one drug manufactured at the Cidra facility—Paxil CR—a
drug not at issue in this case.  *See Blue Cross Blue Shield Association, et al. v. GlaxoSmithKline
LLC*, No. 13-04663, 2016 WL 6612804, at *3 (E.D. Pa. Nov. 9, 2016) ("the Court will not
consider Paxil CR in its analysis of the instant motion").  The health plans engaged Mr. Fischer
to advise them whether they should accept the settlement's benefits or pursue opt-out litigation
on their own.  Most, if not all, of Mr. Fischer's testimony on this subject is shielded from
disclosure under the attorney-client and/or attorney work product privilege.

---

[1] *See* Plaintiffs' July 24, 2013 Complaint in the EDPA Case ("*Compl.*"), Ex. A to the Declaration of Craig L.
Johnson in Support of Non-Party Mark Fischer and Rawlings & Associates, PLLC's Motion to Quash
GlaxoSmithKline's Subpoena for His Deposition and Motion to Transfer This Action to the Eastern District
of Pennsylvania ("Johnson Decl.").

Furthermore, Plaintiffs themselves have already provided testimony from corporate designees about the Paxil CR class actions. Because this testimony sufficed to answer whatever questions GSK had about the topic, Magistrate Judge Heffley denied GSK's efforts to get further discovery from the Plaintiffs in a May 2, 2018 Order.[2]  Plaintiffs' counsel asked GSK to withdraw the subpoena in light of this ruling, yet it refused to do so.

The movants request that (1) the Court transfer this motion under Rule 45(f) to the EDPA for adjudication by Magistrate Judge Heffley (GSK consents to the transfer); and (2) that the subpoena be quashed.

## II.    BACKGROUND

### A.    The underlying case

The underlying action was filed in Pennsylvania state court in July 2011.  It was thereafter removed to the Eastern District of Pennsylvania where it is currently pending. Plaintiffs are 39 health benefit providers that collectively constitute more than 60% of the U.S. market for non-government health benefit plans. GSK is one of the world's largest pharmaceutical manufacturers.  From at least 1997 through 2006, GSK illegally sold huge quantities of adulterated drugs[3] throughout the United States while falsely telling the FDA and the public that the drugs were properly manufactured and thus were reliable, safe, and effective.

---

[2]      Ex. B to Johnson Decl. (5/2/18 Order).  The parties' arguments about this discovery are found in their respective letter briefs (only the relevant exhibits to those letter briefs are included). Exs. C (at 1-3), D (at 2-4), E (at 1-4) to Johnson Decl.

[3]      The FDC Act prohibits the sale of any "adulterated" drug. 21 U.S.C. § 331(a). A drug is adulterated if it has not been made "in conformity with current good manufacturing practice to assure that such drug meets the requirements of [the FDC Act] as to safety and has the identity and strength, and meets the quality and purity characteristics, which it purports or is represented to possess." *Id.*, § 351(a)(2)(B). The statute thus incorporates mandatory minimum standards, known as "current good manufacturing practices" or "cGMPs," promulgated by the FDA. *See* 21 C.F.R. Parts 210 & 211.

GSK manufactured the adulterated drugs at a plant in Cidra, Puerto Rico, GSK's then-largest plant and the sole source of many of the company's most lucrative drugs, including Paxil (an antidepressant) and Avandia (a Type 2 Diabetes drug).[4]  GSK derived as much as $5.5 billion in annual revenue from the drugs produced at Cidra.  GSK operated the plant through a wholly-owned subsidiary, SB Pharmco Puerto Rico, Inc.[5]

In 2010, SB Pharmco pled guilty to the federal crime of shipping adulterated drugs manufactured at Cidra, with intent to defraud and mislead, in violation of the Food, Drug and Cosmetic Act (the "FDC Act"), 21 U.S.C. §§ 331(a), 333(a)(2), 351(a)(2)(B).[6]  GSK paid a $150 million fine for the felony admitted in the guilty plea.[7]  In addition, GSK paid $600 million to settle a related civil whistleblower case brought by Cheryl Eckard, suing as relator on behalf of government healthcare programs.  Ms. Eckard was a GSK Quality Assurance Manager who reported Cidra's problems to GSK management and was fired shortly thereafter.

As admitted in the guilty plea, GSK's misconduct included: production of drugs intended for vulnerable patient populations, such as cancer patients and infants, that were contaminated with micro-organisms; production of a diabetes drug that was chronically super-potent or sub-potent; repeated product mix-ups (different drugs or potencies found in the same container); repeated interference with quality assurance personnel by Cidra's Site Director; and GSK's active concealment from the FDA of serious product defects.[8]

---

[4]      *Compl.*, ¶ 78.

[5]      *Id.* ¶ 58.  The specific drugs at issue are Paxil, Paxil OS, Avandia, Avandamet, Coreg, Bactroban, Kytril, Compazine, Denavir, Dyazide, Dibenzyline, Thorazine, Stelazine, Relafen, Factive, Dyrenium, and Albenza.  *Id.* ¶ 3.

[6]      *See* https://www.justice.gov/opa/pr/glaxosmithkline-plead-guilty-pay-750-million-resolve-criminal-and-civil-liability-regarding.

[7]      *Id.*

[8]      A copy of the Information to which GSK pled guilty is attached as Exhibit A to the *Compl.*.

Plaintiffs allege they were fraudulently induced to overpay billions of dollars for the adulterated drugs made at Cidra.[9]  They seek damages for GSK's violations of RICO and state law.

**B.      GSK's statute of limitations defense**

GSK's main defense is that Plaintiffs' claims are barred by RICO's 4-year statute of limitations and/or applicable 2-year limitations periods governing the state law claims. GSK focuses on March 2005 news reports about a law enforcement seizure of Paxil CR and Avandamet lots from the Cidra facility.  Three class actions were filed by consumers based on these articles alleging financial harm relating to their (and their health plans') purchases of adulterated Paxil CR:

1. *Simonet v. SmithKline Beecham Corp. d/b/a GlaxoSmithKline*, No. 06-01230 (JAF) (D. P.R.);

2. *Paras v. SmithKline Beecham Corp. d/b/a GlaxoSmithKline,* No. BC 307007 (Sup. Ct. Cal.); and

3. *Cole v. SmithKline Beecham Corp*., No. 04CC00653 (Sup. Ct. Cal.).

(collectively, the "Prior Litigations"). Only after the District of Puerto Rico preliminarily approved a notice plan associated with a proposed $23 million class action settlement with GSK in 2009 were these cases publicized.[10]

Despite its contemporaneous efforts to minimize the problems at Cidra,[11] GSK now seeks discovery in support of its argument that the Paxil CR seizure put Plaintiffs on inquiry notice of

---

[9]      *Compl.* ¶¶ 4-11, 183-85.

[10]      Ex. F to Johnson Decl. (*Simonet* Class Settlement Notice).

[11]      After reviewing the relevant articles, the EDPA denied GSK's motion to dismiss on this theory in November 2016, stating that "GSK continued to downplay the extent of its issues and assure the public of its compliance with FDA demands" and citing a GSK statements in an April 2005 *New York Times* article that GSK "was able to resolve the issue [of the drug recalls] quickly because of its strong relationship with the F.D.A."  *Blue Cross Blue Shield Association, et al. v. GlaxoSmithKline LLC*, 2016 WL 6612804, at *10.

unreported manufacturing issues related to, *inter alia*, 16 other GSK products made at Cidra. These products were (1) not seized by the federal law enforcement officers after their inspection of the Cidra facility; and (2) marketed after a GSK spokesperson told *The New York Times* that it had "resolve[d] the issue" with the FDA.

### C.    The discovery proceedings and GSK's subpoena on Plaintiffs' trial counsel

GSK sought discovery of when the health insurers in the EDPA Case became aware of the Prior Litigations in support of its statute of limitations theory.  Beginning in September 2017, GSK noticed the Rule 30(b)(6) depositions of each of the 39 Plaintiffs.  Each notice included the following topic: "Plaintiff's knowledge of the [Prior Litigations], including any inquiry into, prior to July 15, 2007, the claims raised by the litigations and plaintiff's awareness of, request for, or distribution of funds in 2009 from, the settlement of the *Simonet* litigation."[12]  Plaintiffs objected on the basis that the topic "seeks the identification or disclosure of information protected by the attorney-client privilege, common interest privilege, work-product doctrine, or any other applicable privilege or doctrine."[13]  Subject to that (and other) objections, Plaintiffs agreed to produce a witness to testify on that topic.

One by one, the Plaintiffs were deposed. Counsel for GSK questioned each corporate designee about the company's knowledge of the Prior Litigations, particularly the *Simonet* case, including when and how it learned of them.[14] Importantly, the vast majority of Plaintiffs learned about *Simonet* and the settlement reached in that case in 2009 when they were contacted by their

---

[12]    *E.g.*, Ex. C to Johnson Decl. at Ex. 7 to GSK's 4/13/18 Ltr. to Magistrate Judge Heffley (Rule 30(b)(6) Deposition Notice of Aetna Inc., Topic 18).

[13]    Ex. G to Johnson Decl. (Plaintiffs' Joint Objections and Responses to Defendant's Notices of Deposition Pursuant to FED. R. CIV. P. 30(b)(6), dated 11/28/17).

[14]    *See e.g.*, Ex. D to Johnson Decl. at Exs. C and D to Plaintiffs' 4/23/18 Ltr. to Magistrate Judge Heffley (sample excerpted deposition transcripts).

outside counsel, either Lowey Dannenberg or Rawlings & Associates.[15]  Many Plaintiffs, who had long-standing relationships with those firms, retained them to advise them as to their rights as absent class members in connection with that litigation.  GSK acknowledges this.[16]

GSK also sought documents related to the Prior Litigations. On December 22, 2017, GSK served a document request that included a request for "All documents, including communications, related to the [Prior Litigations]."[17] Throughout an extended meet and confer process, Plaintiffs told GSK that the only responsive documents were attorney-client privileged documents.

Disbelieving the health plans' corporate testimony and representations,[18] GSK moved to compel the production of documents related to the Prior Litigations on April 13, 2018 and a week later served a deposition subpoena on opposing counsel in the EDPA Case.[19]

---

[15]      *Id.*

[16]      *See* Ex. C to Johnson Decl. at 3 (GSK's 4/13/18 Ltr. to Magistrate Judge Heffley) ("The source of the witnesses' knowledge in almost all of the depositions is outside counsel – *i.e.* the Lowey and Rawlings attorneys.").

[17]      Ex. C. to Johnson Decl. at Ex. 4 to GSK's 4/13/18 Ltr. to Magistrate Judge Heffley (GSK's Third Set of Requests for Production of Documents from Plaintiffs, dated 12/22/17).

[18]      *See* Ex. E to Johnson Decl. at 3 (GSK's 4/27/18 Ltr. to Magistrate Judge Heffley) (citing break times during Plaintiffs' depositions in an odd effort to convince the Court to infer some amorphous impropriety with Plaintiffs' testimony concerning when it was aware of the Prior Litigations).

[19]      GSK also served a deposition subpoena on Mr. St. Phillip of Lowey Dannenberg, P.C., co-counsel for Plaintiffs in this litigation located in White Plains, New York, as well as identical document subpoenas on St. Phillip's and Fischer's law firms.  Mr. St. Phillip's and his firm are also resisting this discovery.

### D. Magistrate Judge Heffley's May 2 Ruling Prohibiting this discovery from Plaintiffs and Plaintiffs' failed attempt to get GSK to withdraw its subpoenas

On May 2, 2018, Magistrate Judge Heffley denied GSK's motion to compel documents from Plaintiffs relating to the Prior Litigations. Plaintiffs' counsel promptly asked GSK to withdraw the subpoena in light of the ruling but GSK refused.[20]

## III. ARGUMENT

### A. Standards

#### 1. Motions to Transfer Motions to Quash a Subpoena to the Forum Court

Rule 45(f) and the Advisory Committee's Notes accompanying the 2013 amendments introducing the new rule "encourage" courts to transfer subpoena enforcement proceedings to the forum court. *F.D.I.C. v. Axis Reinsurance Co.*, No. 13 MISC. 380 (KPF), 2014 WL 260586, at *3 (S.D.N.Y. Jan. 23, 2014) ("the new Rule 45(f), and the comments thereto, clearly permit and encourage [transfer]. *See* FED. R. CIV. P. 45(f); Committee Note to Amended Rule 45."). Consent of the proposed witness or "exceptional circumstances" are required. FED. R. CIV. P. 45(f). Here, the Movants and GSK consent to the transfer.

#### 2. Motion to Quash Deposition Subpoenas on Opposing Counsel

"On timely motion, the court for the district where compliance is required must quash or modify a subpoena that … requires disclosure of privileged or other protected matter, if no exception or waiver applies" or "subjects a person to undue burden." FED. R. CIV. P. 45(d)(3)(A). Rule 26(c)(1) additionally provides that "[t]he court may, for good cause, issue an order to protect a … person from annoyance, embarrassment, oppression, or undue burden or expense …." FED. R. CIV. P. 26(c)(1).

---

[20] *See* Exs. H & I to Johnson Decl. (William Harrington, Esq.'s 5/3/18 Ltr. to Leslie John, Esq. and Leslie John, Esq.'s 5/3/18 responsive letter, respectively).

"[D]epositions of opposing counsel are disfavored." *United States v. Yonkers Bd. of Educ.*, 946 F.2d 180, 185 (2d Cir. 1991) (citations omitted). "The rationale behind the presumption against such discovery is that 'even a deposition of counsel limited to relevant and nonprivileged information risks disrupting the attorney-client relationship and impeding the litigation.'" *Yash Raj Films (USA) v. Kumar*, No. 05-cv-3811, 2007 WL 3124557, at *4 (E.D.N.Y. Oct. 25, 2007) (quoting *Alcon Labs., Inc. v. Pharmacia Corp.,* 225 F. Supp. 2d 340, 342 (S.D.N.Y. 2002)).

    **B.**    **The Court (or the EDPA on transfer) should quash GSK's attempt to depose opposing counsel.**

        **1.**    **GSK cannot meet the *Shelton* test.**

The Pennsylvania federal courts adopt the test established by the Eighth Circuit in *Shelton v. Am. Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986), which has also been adopted by the Sixth Circuit; see *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621 (6th Cir. 2002). *In re Linerboard Antitrust Litig.*, 237 F.R.D. 373 (E.D. Pa. 2006); *State Farm Mut. Auto. Ins. Co. v. Stavropolskiy*, No. 15-cv-5929, 2017 WL 3116284, at *2 (E.D. Pa. July 21, 2017).[21] Under *Shelton*, "depositions of opposing counsel are permissible only if: '(1) no other means exist to obtain the information; (2) the information sought is relevant and non-privileged; and (3) the information sought is crucial to the preparation of the case.'" *Linerboard*, 237 F.R.D. at 385 (alteration omitted).

---

[21]     While the Second Circuit has stated in *dicta* that it would not adopt the presumption against discovery of opposing counsel in *Shelton*, *In re Subpoena Issued to Dennis Friedman, Esq.*, 350 F.3d 65 (2d Cir. 2003), it nevertheless recognizes that depositions of opposing counsel raise special concerns for the adversary process. *Id.* at 70 ("Courts have been especially concerned about the burdens imposed on the adversary process when lawyers themselves have been the subject of discovery requests, and have resisted the idea that lawyers should routinely be subject to broad discovery.").

GSK cannot meet the first prong of the test: "no other means exist to obtain the information." As discussed earlier, GSK has secured the information necessary to discover the Plaintiffs' knowledge of the Prior Litigation through their depositions.

As to the second element of the *Shelton* test, all the information Mr. Fischer has about his representation of his health plan clients relative to their decision to participate in a class action settlement is covered by the attorney-client privilege and the attorney work-product doctrine. While GSK posits that Mr. Fischer's communications with class counsel are not privileged, that position simply does not make sense. Class counsel and counsel for an absent class member both represent the interests of that absent class member with respect to the claims alleged in the class complaint; communications between them are thus privileged.[22] Moreover, any communications with class counsel relative to the Prior Litigations constitutes attorney work product because they were made in anticipation of potential opt-out litigation.[23] Hence, nothing Mr. Fischer could say about the Prior Litigations is non-privileged.

Nor is the testimony of Mr. Fischer crucial to the preparation of GSK's case. The entire premise of the subpoena rests on the far-fetched notion that the testimony of 39 corporate witnesses on this topic (prepared by Mr. Fischer and his team) was somehow misleading or erroneous. Mr. Fischer's testimony would not reveal any new or contradictory information.

---

[22]     *See Gortat v. Capala Bros.*, No. 07-cv-3629 (ILG)(SMG), 2010 WL 1879922, at *2 (E.D.N.Y. May 10, 2010), *objections overruled*, No. 07-cv-3629 ILG, 2010 WL 3417847 (E.D.N.Y. Aug. 27, 2010) ("class certification gives rise to an attorney-client relationship between potential class members and class counsel.").

[23]     *See United States v. Stewart*, 287 F. Supp. 2d 461, 468 (S.D.N.Y. 2003) ("the sharing of litigation materials among nonadversarial parties, such as co-plaintiffs, or among parties opposing the same adversary in different proceedings, has been held not to constitute waiver [of work product].").

2.      **GSK cannot establish they are entitled to the requested discovery**.

a.  **GSK does not need to depose Mr. Fischer or obtain documents from Rawlings.**

GSK seeks Mr. Fischer's testimony concerning certain of Plaintiffs' engagement of him and his firm in connection with the Prior Litigations and communications with class counsel for the Prior Litigations to show what Plaintiffs knew about those cases and when.[24]  As stated earlier, Mr. Fischer and his team prepared the corporate witnesses to testify about this topic during the discovery period in the case (which, incidentally, ends tomorrow), so all the information concerning the Plaintiffs' knowledge of the Prior Litigations has already been discovered.  During those depositions, counsel for GSK consistently asked each Plaintiff when and how they learned about the Prior Litigations and the Plaintiffs answered the questions.[25]

Magistrate Judge Heffley already recognized that additional discovery on this topic was unnecessary.  GSK propounded document requests on Plaintiffs seeking the same discovery it seeks from Mr. Fischer.  When GSK refused to accept Plaintiffs' representations that any responsive documents would be privileged, it moved to compel.  The court ***denied*** GSK's motion.[26] Undeterred, GSK refused to withdraw the subpoena in an effort to harass Plaintiffs' trial counsel.

The information GSK seeks from the deposition of Plaintiffs' trial attorney has been discovered from other sources without the need to disrupt the adversarial process and burden him in this case.  This factor weighs in favor of quashing the deposition subpoena.

---

[24]     *See* Ex. C. to Johnson Decl. at Ex. 7 to GSK's 4/13/18 Ltr. to Magistrate Judge Heffley (Rule 30(b)(6) Deposition Notice of Aetna Inc., Topic 18).

[25]     *See e.g.,* Ex. D to Johnson Decl. at Exs. C and D to Plaintiffs' 4/23/18 Ltr. to Magistrate Judge Heffley (testimony that Plaintiffs learned of the *Simonet* case in 2009).

[26]     Ex. B to Johnson Decl. (5/2/18 Order).

**b. Mr. Fischer is a key lawyer for the Plaintiffs.**

Mr. Fischer has been front and center in this litigation as co-lead trial counsel, serving an active and integral role in pursuing Plaintiffs' claims, including taking lead in drafting motions and oppositions to motions for dispositive and pre-trial discovery issues, defending the Rule 30(b)(6) depositions of the Plaintiffs and third-party former employees, actively participating in discovery negotiations, and participating in pre-trial conferences with the Court. Mr. Fischer also actively served as counsel to Plaintiffs for purposes of submitting settlement claims in the *Simonet* matter.   To allow his deposition would disrupt and burden the adversary process. Under these circumstances, this factor weighs in favor of quashing his deposition subpoena.[27] This factor also weighs in favor of quashing the deposition subpoena.

**c. It is a virtual certainty that the vast majority of Mr. Fischer's testimony will be protected by privilege and work-product issues.**

As a result of Mr. Fischer's role as counsel to several Plaintiffs in connection with the *Simonet* settlement, as well as his role as lead trial counsel in this case, most, if not all, testimony from Mr. Fischer will fall squarely within the attorney-client privilege or work-product doctrine, as discussed above.  Even GSK concedes that the "source of the witnesses' knowledge in almost all of the depositions is outside counsel – i.e., the Lowey and Rawlings attorneys."[28]  Plaintiffs have previously informed GSK that the only documents potentially responsive are communications of Plaintiffs' in-house or outside counsel that are protected by the attorney-

---

[27] *See Sea Tow International, Inc. v. Pontin*, 246 F.R.D. 421, 426-27 (E.D.N.Y. 2007) (concluding that the role of the attorney sought to be deposed was of counsel, not a fact witness, in both the ongoing litigation and the matter on which discovery was sought, which favored quashing the deposition subpoena).

[28] Ex. C. to Johnson Decl. at 3 (GSK's 4/13/18 Ltr. to Magistrate Judge Heffley).

client privilege, common interest privilege, and/or work-product doctrine.  This factor too weighs in favor of quashing the subpoena.

### d. GSK has conducted a massive amount of discovery and the discovery deadline is tomorrow.

As noted above, GSK has sought (and received) the same discovery it now seeks from Mr. Fischer.  Plaintiffs have produced millions of lines of data and millions of pages of documents in response to GSK's document discovery requests.  All 39 of Plaintiffs' corporate designees have testified about their knowledge of the Prior Litigations.  The discovery period has come to a close as the deadline is tomorrow.  Further discovery from the counsel who prepared Plaintiffs for their testimony on this topic is unnecessary, vexatious, and has already been denied by Magistrate Judge Heffley.[29]

## IV. CONCLUSION

Because Mr. Fischer and Rawlings consent and the Federal Rules encourage it, the Court should transfer this motion under Rule 45(f) to Magistrate Judge Heffley of the Eastern District of Pennsylvania.

On the merits, GSK cannot establish that "no other means exist to obtain the information" it seeks from trial counsel, Mr. Fischer, nor that any of the information about the Prior Litigations is non-privileged and that the testimony is "crucial to the preparation of [its] case." *Linerboard*, 237 F.R.D. at 385 (citation omitted).

---

[29]    Ex. B to Johnson Decl. (5/2/18 Order).

The Court (or the EDPA) should quash GSK's subpoena for Mr. Fischer's testimony[30]

and the documents requested of Rawlings.

Respectfully submitted,

/s/ Craig L. Johnson
Craig L. Johnson
WHONSETLER & JOHNSON, PLLC
11901 Brinley Avenue
Louisville, KY 40243
Phone: (502) 895-2297
Fax: (502) 895-9764
johnson@whonsetler.com
*Counsel for Mark D. Fischer, Esq. and
Rawlings & Associates, PLLC*

## CERTIFICATE OF SERVICE

I hereby certify that on May 7, 2018 a copy of the foregoing was filed electronically through the ECF system and served via e-mail upon:

Leslie John, Esq.
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
JohnL@ballardspahr.com
*Attorney for Defendant GlaxoSmithKline LLC*

Uriel Rabinovitz, Esq.
Lowey Dannenberg, P.C.
44 South Broadway, Suite 1100
White Plains, NY 10601
URabinovitz@lowey.com
*Counsel for Peter D. St. Phillip, Jr.*

---

[30] If the Court is inclined to allow any discovery of Mr. Fischer, it should be limited to a single interrogatory asking when Lowey Dannenberg informed Plaintiffs about the proposed Cidra class action settlement. *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 72 (2d Cir. 2003) (Sotomayor, *J.*) (directing that courts should consider "whether interrogatories should be used at least initially and sometimes in lieu of a deposition.").

13

Laura Mummert, Esq.
LOWEY DANNENBERG, P.C.
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
West Conshohocken, PA 19428
*Counsel for Peter D. St. Phillip, Jr.*

William P. Harrington, Esq.
Adam Rodriguez, Esq.
BLEAKLEY PLATT & SCHMIDT, LLP
One North Lexington Avenue
White Plains, NY  10601
WPHarrington@bpslaw.com
ARodriguez@bpslaw.com
*Counsel for Peter D. St. Phillip, Jr.*


/s/ Craig L. Johnson
Craig L. Johnson

14